1  Michael R. Lozeau (State Bar No. 142893)
   Douglas J. Chermak (State Bar No. 233382)
2  LOZEAU DRURY LLP
   410 12th Street, Suite 250
3  Oakland, CA 94607
   Tel: (510) 836-4200
4  Fax: (510) 836-4205
5  E-mail: doug@lozeaudrury.com

6  Attorneys for Plaintiff
   COMMUNITIES FOR A BETTER ENVIRONMENT
7
   *Plaintiff's Additional Counsel Listed on Next Page*
8
9  Jan Greben (State Bar No. 103464)
   GREBEN & ASSOCIATES
10 125 East De La Guerra, Suite 203
   Santa Barbara, CA 93101
11 Tel: (805) 963-9090
   Fax: (805) 963-9098
12 E-mail: jan@grebernlaw.com
13
   Attorneys for Defendant
14 LOS ANGELES GALVANIZING COMPANY

15

16

17

|  |  |
|---|---|
| FILED | |
| CLERK, U.S. DISTRICT COURT | |
| August 22, 2019 | |
| CENTRAL DISTRICT OF CALIFORNIA | |
| BY: ____VPC____ DEPUTY | |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, a non-profit corporation, <br><br> Plaintiff, <br><br> vs. <br><br> LOS ANGELES GALVANIZING COMPANY, a corporation, <br><br> Defendant. | Case No. 2:18-cv-08516-SJO-AS <br><br> **[~~PROPOSED~~] CONSENT DECREE** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

18
19
20
21
22
23
24
25
26
27
28

Shana Lazerow (State Bar No. 195491)
COMMUNITIES FOR A BETTER ENVIRONMENT
120 Broadway, Suite 2
Richmond, CA 94804
Tel: (510) 302-0430 x 18
Fax: (510) 302-0438
E-mail: slazerow@cbecal.org

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff Communities for a Better Environment ("Plaintiff" or "CBE") and Defendant Los Angeles Galvanizing Company ("Defendant" or "LA Galvanizing"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties" or "Parties."

**WHEREAS**, CBE is an environmental justice non-profit 501(c)(3) organization organized under the laws of the State of California with a local office in Huntington Park, California;

**WHEREAS**, CBE is dedicated to empowering low-income communities of color that seek a voice in determining the health of their air, water and land;

**WHEREAS**, LA Galvanizing is the owner and operator of a metal galvanizing facility, located at 2518 E. 53rd Street in Huntington Park, California, hereinafter referred to by the Settling Parties as the "Facility";

**WHEREAS**, the Facility falls within Standard Industrial Classification ("SIC") code 3479 (Coating, Engraving, and Allied Services);

**WHEREAS**, the Facility consists of the following three related, adjacent parcels in which industrial activities occur – the 52nd Street Facility, the 53rd Street Facility, and the Main Office Facility;

**WHEREAS**, CBE has approximately 6,000 members who live and/or recreate in and around the waters of the State of California;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251

*et seq.*;

**WHEREAS**, the Permit includes the following requirements for all permittees, including LA Galvanizing: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

**WHEREAS**, on June 13, 2018, CBE served LA Galvanizing, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of Los Angeles Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice Letter"), alleging violations of the Act and the Permit at the Facility;

**WHEREAS**, on October 3, 2018, CBE filed a complaint against LA Galvanizing in the United States District Court, Central District Court of California, entitled *Communities for a Better Environment v. Los Angeles Galvanizing Company* (Case No. 2:18-cv-08516-SJO-AS); alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility ("Complaint") based on the 60-Day Notice Letter;

**WHEREAS**, CBE contends in its 60-Day Notice Letter and Complaint that, among other things, LA Galvanizing has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act;

**WHEREAS**, LA Galvanizing denies all allegations set forth in the 60-Day Notice Letter and Complaint relating to the Facility;

WHEREAS, the Settling Parties, through their authorized representatives and without either adjudication of CBE's claims or any admission by LA Galvanizing of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full CBE's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

WHEREAS, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE Settling Parties, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1.  The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.  Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.  The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.  Plaintiff has standing to bring this action;

5.  The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.   OBJECTIVES**

6.  It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.,* and to resolve those issues alleged by CBE in its Complaint.  In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act

at the Facility.

## II. COMMITMENTS OF LA GALVANIZING

7. In order to reduce or prevent pollutants associated with industrial activity from discharging via storm water to the waters of the United States, LA Galvanizing shall implement appropriate structural and non-structural BMPs, as required by the Permit, as described more fully below.

8. **Maintenance of Implemented Storm Water Controls.** LA Galvanizing agrees that the Facility shall maintain in good working order all storm water collection and management systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

9. **Structural Improvements to Storm Water Management Measures at the Facility.** By August 30, 2019, unless otherwise indicated, LA Galvanizing shall implement the following structural best management practices ("BMPs") to improve storm water management at the Facility, as indicated on the map attached hereto as Exhibit A:

**52nd Street Facility**

    a. In the Northwest Yard, LA Galvanizing shall extend the curb near the sump to extend all the way to the building that houses the galvanizing tank.

    b. To keep storm water from contacting the outdoor work area in the Northwest Yard, LA Galvanizing shall either relocate to a covered area or install a canopy over the work area. A schematic of this canopy is attached hereto as Exhibit B.

    c. Within fourteen (14) days of each of the above improvements, LA Galvanizing shall e-mail CBE digital photographs confirming said improvements.

**Alley Between the 52nd Street Facility and the 53rd Street Facility**

    d. Prior to forecast storm events with a greater than 50% chance of

precipitation as determined by the National Oceanic and Atmospheric Administration (NOAA; http://forecast.weather.gov/), LA Galvanizing shall install temporary berms (i.e., Pig Spillblocker or equivalent) to control any storm water discharges from the Facility to the alley between the 52nd Street Facility and the 53rd Street Facility. This BMP shall ensure that all discharges from the 52nd Street Facility (with the exception of the Northeast Yard) and the 53rd Street Facility are routed to the Facility's storm water treatment system.

**53rd Street Facility**

      e.      LA Galvanizing shall cover all waste bins in anticipation of any forecast storm events with a greater than 50% chance of precipitation as identified by NOAA (see Paragraph 9(d) above).

      f.      LA Galvanizing shall add media to the storm water treatment system designed to remove nitrates and nitrites.

    10.    **Improvements to Housekeeping Measures at the Facility.** By August 30, 2019, LA Galvanizing shall implement the following housekeeping procedures at the Facility:

**52nd Street Facility**

      a.      LA Galvanizing shall enhance its housekeeping practices as follows to ensure that no metal pieces or metal flakes are discharged from the Facility:

          i.      LA Galvanizing shall refrain from storing any raw materials, intermediate materials, or finished goods on the sidewalk north of the 52nd Street Facility during storm events.

         ii.      LA Galvanizing shall dedicate an employee to monitoring and cleaning the sidewalk north of the 52nd Street Facility, to ensure that the area is kept free from all metal related to its industrial operations. LA Galvanizing shall maintain a written log of this employee's monitoring and cleaning efforts.

        iii.      In the southwest drainage area, LA Galvanizing shall refrain from

storing any materials on top of the trench drain, or on the alley-side of the trench drain.

**Alley Between the 52nd Street Facility and the 53rd Street Facility**

b.     LA Galvanizing shall sweep the alley prior to any predicted storm event with a greater than 50% chance of precipitation as identified by NOAA (see Paragraph 9(d) above).

**53rd Street Facility**

c.     LA Galvanizing shall enhance the maintenance schedule for the Facility's storm water treatment system by replacing media when there is breakthrough between the lead and lag media vessels.

d.     To reduce track-out, LA Galvanizing shall perform regular sweeping inside the Solid Waste Storage Building.

11.     **Additional Monitoring and Sampling.**  Beginning during the 2019-2020 reporting year, LA Galvanizing shall conduct the following enhanced monitoring and sampling procedures.

**52nd Street Facility**

a.     **Eliminating Discharges from Northeast Yard of 52nd Street Facility.**

i.     To demonstrate and verify that all storm water from the Northeast Yard of the 52nd Street Facility (in the vicinity of the storm water tank) is entering the trench drain and not being discharged from the Facility onto the sidewalk and street, LA Galvanizing shall visually monitor the trench drain in this area during all storm events during the 2019-2020 wet season.

ii.     During at least three storm events during the 2019-2020 reporting year, LA Galvanizing shall maintain a written log of

its observations and take digital photographs of the Northeast
Yard around the trench drain.

iii.    If LA Galvanizing observes any storm water discharging to the
street or sidewalk from the Northeast Yard, LA Galvanizing
shall begin a regular practice of deploying temporary berms
(Pig Spillblocker or equivalent) prior to any and every
predicted storm event with a greater than 50% probability (as
identified by NOAA and described above in Paragraph 9(d)) at
the Facility such that storm water in the Northeast Yard will be
prevented from directly discharging from the Facility and
instead routed to the storm water capture tank for reuse and/or
treatment prior to discharge.

iv.    Should LA Galvanizing be required to begin implementing
these temporary berms pursuant to Paragraph 11.a.iii, during
the first two storm events with said berms in place, LA
Galvanizing shall document its efforts with digital photographs
of the berms and the trench drain.  LA Galvanizing shall
provide these photographs to CBE within fourteen (14) days of
each of the two storm events.

b.    **Eliminating Discharges from Northwest Yard of 52nd Street**
**Facility.**

i.    To demonstrate and verify that all storm water from the
Northwest Yard of the 52nd Street Facility is entering the
trench drain and not being discharged from the Facility onto
the sidewalk and street, LA Galvanizing shall visually monitor
the trench drain in this area during all storm events during the

2019-2020 wet season.

ii. During at least three storm events during the 2019-2020 reporting year, LA Galvanizing shall maintain a written log of its observations and take digital photographs of the Northwest Yard around the trench drain.

iii. If LA Galvanizing observes any storm water discharging to the street or sidewalk from the Facility, LA Galvanizing shall begin a regular practice of implementing temporary berms (Pig Spillblocker or equivalent) prior to any and every predicted storm event with greater than 50% probability as identified by NOAA (described above in Paragraph 9(d)) at the Facility such that storm water in the Northwest Yard will be prevented from directly discharging from the Facility and instead be routed to the Facility's storm water treatment system prior to discharge.

iv. Should LA Galvanizing be required to begin implementing these temporary berms pursuant to Paragraph 11.b.iii, during the first two storm events with said berms in place, LA Galvanizing shall document its efforts with digital photographs of the berms and the trench drain. LA Galvanizing shall provide these photographs to CBE within fourteen (14) days of each of the two the storm events.

c. **Eliminating Discharges from Southwest Drainage Area of 52nd Street Facility.**

i. To demonstrate and verify that all storm water from the southwest drainage area of the 52nd Street Facility is entering the trench drain and not being discharged from the Facility into

the alley, LA Galvanizing shall visually monitor the trench

drain in this area during all storm events during the 2019-2020

wet season.

    ii.    During at least three storm events during the 2019-2020

reporting year, LA Galvanizing shall maintain a written log of

its observations and take digital photographs of the southwest

drainage area around the trench drain.

    iii.    If LA Galvanizing observes any storm water discharging to the

alley from the Northwest Yard drainage area, LA Galvanizing

shall begin a regular practice of implementing temporary berms

(Pig Spillblocker or equivalent) prior to any and every

predicted storm event at the Facility such that storm water in

the Northwest Yard will be prevented from discharging directly

from the Facility and instead routed to the Facility's storm

water treatment system prior to discharge.

    iv.    Should LA Galvanizing be required to begin implementing

these temporary berms pursuant to Paragraph 11.c.iii, during

the first two subsequent storm events with said berms in place,

LA Galvanizing shall document its efforts with digital

photographs of the berms and the trench drain.  LA

Galvanizing shall provide these photographs to CBE within

fourteen (14) days of each of the storm events.

**Alley Between the 52nd Street Facility and the 53rd Street Facility**

    d.    To demonstrate and verify that any storm water  being discharged
from any portion of the Facility into the alley is diverted to the 53rd Street Facility and
treatment systems, during at least two (2) storm events during the 2019-2020 reporting

year, LA Galvanizing shall take digital photographs of the all temporary berms placed in the alley, as well as of views of the alley looking in both directions as it extends along the Facility.   LA Galvanizing shall provide these photographs to CBE within fourteen (14) days of each of the storm events.

### 53rd Street Facility

e.      To demonstrate the effectiveness of the Facility's storm water treatment system, LA Galvanizing shall collect and analyze storm water samples from the storm water treatment system from three (3) qualifying storm events during each half of the 2019-2020 reporting year.  If LA Galvanizing has not collected three (3) samples by January 1, 2020, LA Galvanizing shall collect and analyze storm water samples from the system from up to four (4) qualifying storm events during the latter half of the 2019-20120 reporting year, providing that sufficient qualifying storm events ("QSE") occur.

### Main Office Facility

f.      LA Galvanizing shall include two new storm water sampling locations at the Main Office Facility in its Monitoring Implementation Plan – one at the northern perimeter and one at the southern perimeter.

g.      **Determination of BMPs for Discharges at the Southern Perimeter**.

i.      During the 2019-2020 reporting year, LA Galvanizing shall collect at least four (4) storm water samples from the discharge point at the southern perimeter of the Main Office Facility.  If LA Galvanizing has not collected two (2) storm water samples from this location during the first half of the 2019-2020 reporting year, then LA Galvanizing shall collect the required four (4) storm water samples during the second half of the

2019-2020 reporting year to the extent that there are sufficient QSEs. LA Galvanizing shall analyze these discharges for the same parameters it includes in its analysis of storm water samples for the other storm water samples from the Facility.

ii. If these storm water sampling results exceed any of the applicable Numeric Action Levels ("NALs") in the General Permit, then by August 1, 2020, LA Galvanizing shall implement BMPs with filters containing media designed to reduce concentrations of those pollutants that exceeded a particular NAL. Alternatively, LA Galvanizing may also install berms (Pig Spillblocker or equivalent) to divert industrial storm water flows away from this outfall to a treatment system prior to discharge.

12. **Employee Training.** Within sixty (60) days of the Effective Date, Defendant shall conduct employee training for employees/workers who have responsibility for the implementation of any portion of the SWPPP, including the Monitoring Implementation Plan, or compliance with other terms of the Permit or Consent Decree, to reflect the new measures that are contained in this Consent Decree.

13. **Amendment of SWPPP.** Within thirty (30) days of the Effective Date, LA Galvanizing shall amend the Facility's SWPPP to incorporate all changes, improvements, and best management practices set forth in or resulting from this Consent Decree. LA Galvanizing shall ensure that all maps, tables, and text comply with the requirements of the Permit. In particular, the SWPPP map must show the location of all storage tanks, filtration measures, and all storm water discharge locations.

LA Galvanizing shall revise the SWPPP to describe all structural and non-structural BMPs, details of the measures to be installed, and discuss why such BMPs should be effective in

addressing the pollutant sources at the Facility.  A copy of the amended SWPPP shall be provided to CBE within ten (10) business days of completion.

14. **Storm Water Analysis**.  LA Galvanizing shall analyze each storm water sample taken in accordance with the General Permit and this Consent Decree for, at a minimum, pH, total suspended solids, oil and grease, lead, zinc, iron, and nitrate + nitrite as nitrogen.

15. **Monitoring Results.**  Results from the Facility's sampling and analysis during the term of this Consent Decree shall be provided to CBE within thirty (30) days of receipt of the sampling results by Los Angeles Galvanizing or its counsel.

16. **Meet and Confer Regarding Exceedance of NALs**.  If the Facility's storm water sampling results during the 2019-2020, 2020-2021, or 2021-2022 reporting years indicate that the average of the analytical results for a particular parameter exceed the annual NALs (as set forth in the General Permit), LA Galvanizing agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples.  Also, if two or more analytical results from samples taken for any parameter exceed the instantaneous maximum NAL, LA Galvanizing agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples.

In furtherance of improving its storm water management practices, LA Galvanizing shall prepare a written statement ("Action Plan") discussing:

(1) Any exceedance or exceedances of NALs;

(2) An explanation of the possible cause(s) and/or source(s) of any exceedance; and

(3) Responsive actions to improve its storm water management practices, including modified or additional feasible BMPs to be considered to further reduce the possibility of future exceedance(s), and the proposed dates that such actions will be taken.

Such Action Plan shall be e-mailed to CBE not later than July 30th during each year of this Consent Decree in which the average of analytical results exceed NALs or in which there are two or more exceedances of instantaneous maximum NALs.

17.    Upon receipt of the Action Plan, CBE may review and comment on any identified or omitted additional measures.  If requested by CBE within thirty (30) days of receipt of such Action Plan, CBE and LA Galvanizing shall meet and confer to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the NALs.  If requested by CBE within thirty (30) days of receipt of such Action Plan, CBE and LA Galvanizing shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Action Plan to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the NALs.  If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Action Plan, the Settling Parties shall engage in the dispute resolution procedures pursuant to Paragraphs 28 and 29 below.

18.    Any concurrence or failure to object by CBE with regard to the reasonableness of any additional measures required by this Consent Decree or implemented by LA Galvanizing shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water discharges into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the General Permit.

19.    **Provision of Documents and Reports.**  During the term of this Consent Decree, LA Galvanizing shall provide CBE with a copy of all documents submitted to the Regional Board or the State Board concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the Permit.  Such documents and reports shall be mailed to CBE contemporaneously with submission to such agency.  Alternatively, to the extent that LA Galvanizing submits such

documents to the Regional Board or State Board via the State Board's Stormwater Multiple Application and Report Tracking System ("SMARTS"), LA Galvanizing may satisfy this requirement by providing notice to CBE via e-mail that said results have been uploaded to SMARTS within seven (7) days of uploading said documents.

20. **Annual Site Inspection.** Up to three CBE representatives or consultants (including an attorney), may conduct one inspection ("Site Inspection") at the Facility during each reporting year that the term of this Consent Decree is in effect. The Site Inspection shall occur during normal business hours and CBE shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours notice prior to a Site Inspection during wet weather, and seventy-two (72) hours notice prior to a Site Inspection during dry weather. Notice will be provided by electronic mail. During the Site Inspection, Defendant shall allow CBE and/or its representatives access to the Facility's SWPPP, storm water monitoring records, and non-privileged reports and data related to storm water monitoring at the Facility. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of storm water discharge from the Facility's designated discharge points referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to CBE. CBE's representative(s) may observe the split sample(s) being collected by Defendant's representative. CBE shall be permitted to take photographs and/or video recording during any Site Inspection pursuant to this paragraph. If CBE takes photographs and/or video recording, CBE shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection.

## III. MITIGATION PAYMENT, REIMBURSEMENT OF LITIGATION FEES AND COSTS, OVERSIGHT, AND STIPULATED PAYMENTS

21. **Mitigation Payment.** In recognition of the good faith efforts by LA Galvanizing to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by LA Galvanizing of any penalties, which have been disputed but may have been assessed in

this action if it had been adjudicated adverse to LA Galvanizing, the Settling Parties agree that LA Galvanizing will pay the sum of forty thousand dollars ($40,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects relating to water quality improvements in Los Angeles County watersheds. Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little. Payment shall be made by LA Galvanizing to the Rose Foundation within thirty (30) calendar days of the Effective Date. LA Galvanizing shall copy CBE with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the Settling Parties within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

22. **Reimbursement of Fees and Costs.** LA Galvanizing shall reimburse CBE in the amount of sixty-one thousand five hundred dollars ($61,500) to help defray CBE's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to LA Galvanizing's attention, and negotiating a resolution of this action in the public interest. The payment shall be made within thirty (30) days of the Effective Date. The payment shall be made via wire transfer or check, made payable to: "Lozeau Drury LLP" and delivered by overnight delivery, unless payment via wire transfer, to: Lozeau Drury LLP, c/o Douglas Chermak, 1939 Harrison Street, Suite 150, Oakland, CA 94612.

23. **Compliance Monitoring Funds.** As reimbursement for CBE's future fees and costs that will be incurred in order for CBE to monitor LA Galvanizing's compliance with this Consent Decree and to effectively meet and confer and evaluate storm water monitoring results for the Facility, LA Galvanizing agrees to reimburse CBE for its reasonable fees and costs incurred in overseeing the implementation of this Consent Decree up to but not exceeding six thousand ($6,000) per reporting year (July 1 – June 30). Fees and costs reimbursable pursuant to

this paragraph may include, but are not limited to, those incurred by CBE or its counsel to meet and confer regarding proposed treatment options, review water quality sampling reports, review photographs, review annual reports, discussion with representatives of LA Galvanizing concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions, and water quality sampling. CBE shall provide an invoice containing an itemized description of tasks performed and associated daily time for any fees and costs incurred in overseeing the implementation of this Consent Decree during the prior reporting year. Up to three annual payments (one addressing any monitoring associated with the 2019-2020 reporting year, and one addressing monitoring associated with the 2020-2021 reporting year, and one addressing any monitoring associated with the 2021-2022 reporting year) shall be made payable to "Lozeau Drury LLP" within thirty (30) days of receipt of an invoice from CBE that contains an itemized description of tasks performed and associated daily time, fees and costs incurred by CBE to monitor implementation of the Consent Decree during the previous twelve (12) months or the period since the last invoice.

## IV.  COMMITMENT OF COMMUNITIES FOR A BETTER ENVIRONMENT

24.  **Submission of Consent Decree to DOJ.**  Within three (3) business days of receiving all of the Settling Parties' signatures to this Consent Decree, CBE shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5. The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period. If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408

and California Evidence Code section 1152.

## VI.    WAIVER, RELEASES AND COVENANTS NOT TO SUE

25.    In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from CBE's allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the Termination Date of this Consent Decree.

26.    **No Admission.**  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and LA Galvanizing expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by LA Galvanizing of any fact, finding, conclusion, issue of law, or violation of law.  However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## VII.    BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

27.    **Informal Dispute Resolution**.  The Settling Parties will engage in "Informal Dispute Resolution" pursuant to the terms of this paragraph:

a.    If a dispute under this Agreement arises, including whether any Settling Party believes that a violation of the Agreement and the Court's dismissal order has occurred, the Settling Parties will meet and confer (telephonically or in-person) within twenty-one (21) days of receiving written notification of a request for such meeting.  During the meet and confer proceeding, the Settling Parties will discuss the dispute and make reasonable efforts to devise a

mutually acceptable plan, including implementation dates, to resolve the dispute. The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond twenty-one (21) days.

b.      If any Settling Party fails to meet and confer within the timeframes set forth in paragraph (a) directly above, or the meet and confer does not resolve the dispute, after at least twenty-one (21) days have passed after the meet and confer occurred or should have occurred, either Settling Party may initiate the "Formal Dispute Resolution" procedures outlined directly below.

28.     **Formal Dispute Resolution.** In any action or proceeding which is brought by any Settling Party against any other Settling Party pertaining to, arising out of, or related to the requirements of the Court's dismissal order and this Agreement, the Settling Parties will first utilize the "Informal Dispute Resolution" meet and confer proceedings set forth in the preceding paragraph and, if not successful, the Settling Parties will utilize the "Formal Dispute Resolution" procedures in this paragraph. "Formal Dispute Resolution" will be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in the United States District Court, Central District of California, to determine whether either party is in violation of the Agreement and the Court's dismissal order and, if so, to require the violating party to remedy any violation identified by the District Court within a reasonable time frame. Litigation costs and fees incurred in the Formal Dispute Resolution process will be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. § 1365

29.     **Force Majeure**. LA Galvanizing will notify CBE if timely implementation of LA Galvanizing's respective duties under this Consent Decree becomes impossible due to circumstances beyond the control of LA Galvanizing or its agents, and which could not have been reasonably foreseen and prevented by the respective LA Galvanizing's exercise of due diligence. Any delays due to the LA Galvanizing's respective failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree will not, in any event, be considered to be circumstances beyond LA Galvanizing's control.

Financial inability will not, in any event, be considered to be circumstances beyond the LA Galvanizing's control.

a.     If LA Galvanizing claims impossibility, it will notify CBE in writing within twenty (20) days of the date that LA Galvanizing discovers the event or circumstance that caused or would cause non-performance with the terms of this Consent Decree, or the date LA Galvanizing should have known of the event or circumstance by the exercise of due diligence. The notice must describe the reason for the non-performance and specifically refer to this section of this Consent Decree. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by LA Galvanizing to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. LA Galvanizing will adopt all reasonable measures to avoid and minimize such non-performance.

b.     The Settling Parties will meet and confer in good faith concerning the non-performance and, if the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of LA Galvanizing, due to circumstances beyond the control of LA Galvanizing that could not have been reasonably foreseen and prevented by the exercise of due diligence by LA Galvanizing, new performance deadlines will be established.

c.     If CBE disagrees with LA Galvanizing's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party may invoke the dispute resolution process described in Paragraphs 28 and 29 of this Consent Decree. In such proceeding, LA Galvanizing will bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## VIII.   <u>**MISCELLANEOUS PROVISIONS**</u>

30.     **Effective Date.**  The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

31.     **Term of Consent Decree.**   This Consent Decree shall terminate on December 21, 2022, or through the conclusion of any proceeding to enforce this Consent Decree initiated prior to December 21, 2022, or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the latest occurrence.

32.     **Execution in Counterparts.**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

33.     **Facsimile Signatures.**  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

34.     **Construction.**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

35.     **Authority to Sign.**  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

36.     **Integrated Consent Decree.**  All Consent Decrees, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

37.     **Severability.**  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

38.     **Choice of Law.**  This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

39.     **Full Settlement.**  This Consent Decree constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the Consent Decree has been freely and

voluntarily entered into by the Parties with and upon advice of counsel.

40. **Negotiated Consent Decree.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

41. **Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

42. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

43. **Mailing of Documents to CBE/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to CBE pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> Communities for a Better Environment
> Attention: Shana Lazerow
> 120 Broadway, Suite 2
> Richmond, CA 94804
> E-mail: slazerow@coastkeeper.org
>
> With copies sent to:
>
> Douglas Chermak
> Lozeau Drury LLP
> 1939 Harrison Street, Suite 150
> Oakland, CA 94612
> E-mail: doug@lozeaudrury.com

Unless requested otherwise by LA Galvanizing, any notices or documents required or

provided for by this Consent Decree or related thereto that are to be provided to LA Galvanizing pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

LA Galvanizing:

Los Angeles Galvanizing Company
Attention: Lance Rosenkranz
2518 E. 53rd Street
Huntington Park, CA 90255
E-mail: lancerosenkranz@msn.com

With copies sent to:

Jan Greben
Greben & Associates
125 East De La Guerra, Suite 203
Santa Barbara, CA 93101
E-mail: jan@grebenlaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

44. The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.


COMMUNITIES FOR A BETTER ENVIRONMENT

Date: _____, 2019


_____
Darryl Molina Sarmiento
Executive Director
Communities for a Better Environment

LOS ANGELES GALVANIZING COMPANY

Date: _____, 2019

_____
<mark>NAME</mark>
<mark>TITLE</mark>

Approved as to form:

    LOZEAU DRURY LLP

    Date: _____, 2019

    _____
    Douglas Chermak
    Attorneys for Communities for a Better Environment

    GREBEN & ASSOVIATES

    Date: _____, 2019

    _____
    Jan Greben
    Attorney for LA Galvanizing

**IT IS SO ORDERED.**

Date: August 22, 2019.

_____
Honorable S. James Otero
United States Magistrate Judge
Central District of California